## Fox v. Tio, Executor.

Where a party against whom an order of seizure and sale has been issued, purchases the property offered for sale at twelve months' credit, but fails to comply with the terms of the sale by furnishing bond with surety, and the plaintiff takes a rule upon her to show cause why the property should not be sold for cash, without appraisement, a judgment of the court making the rule absolute is not required to be signed. Such a judgment may be executed, or be appealed from, though not signed.

Where notices of a sheriff's sale have been posted at the court-house door, and at a public hotel, the usual place of making judicial sales, in the same town, and at a coffee-house in a neighboring village in the same parish, it will be considered a sufficient compliance with the stat. of 6 April, 1843, s. 1, which requires such notices to be posted "at the court-house door, and at two other public places in the parish."

APPEAL from the District Court of the First District, *Buchanan*, J.

*Benjamin* and *Micou*, for the plaintiff. The judgment on the rule was a final one. Code of Pract. art. 539. It should have been signed. Code of Pract. arts. 546, 565. *Cooley* v. *Seymour*, 9 La. 275. Its execution was consequently illegal. Code of Pract. art. 624.

*Le Gardeur* and *Grima*, for the appellant. The judgment on the rule did not require the signature of the judge. *Van Winckle* v. *Flecheaux*, 12 La. 148. *Krœutler* v. *Bank of United States*, 11 Rob. 160. It was not a final judgment, but a decision on a question arising in the execution of the final judgment.

The judgment of the court was pronounced by

SLIDELL, J. *Macarty* had obtained an order of seizure and sale against *Isabella Fox*, and the property seized was adjudicated at twelve months' credit to her. She neglected to furnish bond and security, and, after the twelve months had expired, *Macarty* took a rule upon her, to show cause why the

property should not be sold for cash and without appraisement, suggesting as the grounds of the motion, the adjudication and her neglect to furnish bond. To this summary form of proceeding by rule she made no exception; but filed an answer to the rule, not denying generally *Macarty's* right to relief, but alleging specially as causes why *Macarty* should not maintain the rule, that she had attempted, since the adjudication, to effect a sale at public auction of the property, and was prevented by *Macarty's* interference, and that there was an outstanding claim of title in *Poultney's* heirs, which was calculated to affect the value of the property and prevent a fair sale. At the trial of this rule the default of *Fox* to furnish a twelve months bond with surety, was admitted; and the court refused to hear evidence on the subject of the alleged interference, the plea itself exhibiting no legal defence, and considered the matter of an outstanding adverse title as already disposed of by anterior proceedings in the cause. *Macarty's* rule was made absolute, no appeal was taken, the sheriff proceeded to a resale of the property for cash and without appraisement, and *Macarty's* executor became the purchaser. *Fox* then brought the present suit, the object of which is to have the adjudication of the land to *Macarty's* executor, decreed to be null and void. Two points are presented by the plaintiff:

I. That the order directing the resale was such a judgment as required the signature of the judge; that it not having been signed, its execution was illegal. The relief prayed by this rule was incidental to the execution of the final judgment, to wit, the decree of seizure and sale. Upon the execution of that decree, *Fox*, becoming herself the purchaser, made default by not giving bond and security; and the plaintiff, by his rule, asked the court to place him in the same position, in the further execution of his judgment, that he would have occupied, if Fox had fulfilled her duty, and given him a twelve months bond. To the form of proceeding thus adopted the defaulting purchaser made no objection; the trial was conducted in the ordinary mode of trying rules; and the decree upon it was a decree incidental and auxiliary to the execution of the final judgment theretofore rendered. As such, though unsigned, it could be executed, or be made the subject of appeal. As to what judgments require signature, and what do not, there is perhaps some obscurity in our Code of Practice; but, taking into view the circumstances of this case, and also the mode in which the rule was tried, without objection by the defendant in the rule, we deem the point untenable. The order being appealable, and no appeal having been taken, we are not permitted to inquire into the alleged errors of the order making *Macarty's* rule absolute.

II. It is contended that the sale was void, because not properly advertised. One advertisement was posted at the parish court-house door, in the town of Lafayette; one at the Exchange Hotel, the most public and frequented hotel in Lafayette, and the usual place for making judicial sales; and one at a coffee-house in the village of Gretna. The point made by the plaintiff is, that three different places in the parish should have been selected; that it was illegal to put up two of the notices in the same place, to wit, the city of Lafayette. She relies on the case of *Pumphrey* v. *Delahoussaye*, 9 Rob. 42. The act of April 6, 1843, sect. 1, dispensed with newspaper publications in certain parishes and under certain circumstances, declaring that a publication of such sale, affixed at the court-house door and at two other public places in the parish, (*deux autres lieux publics de la paroisse*,) shall be sufficient. If instead of the expression "two other public places in the parish," the language had been two other places

Fox
*v.*
Tio.

Fox
*v.*
Tio.

in the parish, the point would have been plausible. But as it stands, we cannot say that the law has been disobeyed. The court-house door was one "public place," expressly designated; the Exchange Hotel was another "public place in the parish," and, in point of fact, as the evidence establishes, the place of greatest resort in the whole parish. Muche's coffee house at Gretna, was another "public place in the parish." The testimony shows that this building forms a corner at the ferry landing; that many planters cross there; and, in short, that to all the public places, where the notices were posted, the people of the parish resort. The law, we think, has been fairly observed.

It is therefore decreed that the judgment of the District Court be reversed; and it is further decreed that, there be judgment in favor of the defendant, that he be quieted in the possession and ownership of the property in the petition described, and that the plaintiff pay the costs in both courts.